## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **FAIRN AND SWANSON, INC.**<br>**400 Lancaster Street**<br>**Oakland, California 94601**<br><br>                    **Plaintiff,**<br><br>        **v.**<br><br>**UNITED STATES OF AMERICA**<br>**c/o United States Attorney**<br>**Judiciary Building**<br>**555 Fourth Street, N.W.**<br>**Washington, DC 20530**<br><br>**AND**<br><br>**ALCOHOL AND TOBACCO TAX**<br>**AND TRADE BUREAU**<br>**1310 G Street, N.W.**<br>**Washington, DC 20005**<br><br>**AND**<br><br>**JOHN J. MANFREDA, in his official capacity as**<br>**ADMINISTRATOR**<br>**ALCOHOL AND TOBACCO TAX**<br>**AND TRADE BUREAU**<br>**1310 G Street, N.W.**<br>**Washington, DC 20005**<br><br>                    **Defendants.** | **Civil Action No. _____**<br><br><br>**Civil Action**<br><br>**COMPLAINT FOR DECLARATORY**<br>**AND INJUNCTIVE RELIEF** |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff Fairn and Swanson, Inc. ( "Fairn") by way of Complaint against the United

States of America ("United States"), the Alcohol and Tobacco Tax and Trade Bureau ("TTB"),

and John J. Manfreda in his official capacity as Administrator of the Alcohol and Tobacco Tax

and Trade Bureau ("Administrator") (collectively "Defendants"), alleges as follows:

## NATURE OF THE ACTION

1.      This action under the provisions of 5 U.S.C. §§ 702 and 706 seeks declaratory and

injunctive relief to hold unlawful and set aside the unlawful, arbitrary and capricious decision of

TTB that Fairn's export warehouse proprietor's permit for Export Warehouse EW-WA-39 in

Seattle, Washington, was automatically terminated by regulation nearly 16 years ago causing

irreparable harm to Fairn.  This action is also brought under 5 U.S.C. §§ 553(b), 702 and 706

seeking declaratory and injunctive relief against TTB's promulgation of a substantive rule of

general applicability without advance notice and comment requiring the reporting of Subchapter

S corporation stock placed in trust for the benefit of a family member as a change in ownership

or control.

## PARTIES

2.      Plaintiff Fairn is a California corporation with its principal place of business

located at 400 Lancaster Street, Oakland, California 94601.

3.      Defendant United States has offices in Washington, DC; Defendant TTB is

Headquartered at 1310 G Street, N.W., Washington, DC 20005; and Defendant Administrator

has his office at 1310 G Street, N.W., Washington, DC 20005.

## JURISDICTION AND VENUE

4.      Jurisdiction over the parties and subject matter of this action is proper in this

Court pursuant to 5 U.S.C. §§ 558 (revocation and expiration of licenses) and 702 (right of

review of a person adversely affected or aggrieved by agency action) and 706 (scope of review

of reviewing court), 28 U.S.C. § 1331 (actions arising under the laws of the United States), and

28 U.S.C. § 1346 (civil action against the United States founded on an Act of Congress or

regulation of an executive agency) and 28 U.S.C. § 1361 (action to compel an offer of an agency

of the United States to perform his duty).

5.      The decision challenged in this action is final agency action of TTB.

6.      There is an actionable and justiciable controversy between Fairn and Defendants

requiring resolution by this Court.

7.      This Court has personal jurisdiction over Defendants United States, TTB and

Administrator.

8.     Venue in this district is proper pursuant to 28 U.S.C. § 139l(b) and (e) and 5

U.S.C. § 703.

9.     This Court may grant declaratory and injunctive relief pursuant to the Declaratory

Judgment Act, 28 U.S.C. §§ 2201 and 2202.

10.     This action facilitates TTB's collection of excise taxes and is not brought for the

purpose of restraining the assessment or collection of a tax which is prohibited by 28 U.S.C.

§ 7421(a).

**STANDING**

11.     Plaintiff Fairn has standing to bring this action under 5 U.S.C. § 558 as a licensee

of TTB denied the notice and opportunity prescribed therein and under 5 U.S.C. § 702 as a

person aggrieved by agency action.

**STATEMENT OF FACTS**

12.     In January 2003, the Bureau of Alcohol Tobacco and Firearms ("ATF") was

reorganized through the transfer of ATF to the Department of Homeland Security while ATF's

revenue functions remained with the Treasury Department in the newly created Alcohol and

Tobacco Tax and Trade Bureau.

13.     Fairn has been doing business as an export warehouse proprietor for more than 20 years holding an export warehouse proprietor's permit for TTB export warehouse EW-WA-39 in Seattle, Washington.

14.     TTB has approved notifications submitted by Fairn since 1998 to report a change in ownership and control.

15.     TTB's auditors audited Fairn EW-WA-39 operations in 2010 and in their audit report of April 30, 2010 found no compliance issues.  *See* Excise Tax Audit of Fairn & Swanson, Inc. Registry Number: EW-WA-39 dated April 30, 2010 by the San Francisco Field Office of the Alcohol and Tobacco Tax and Trade Bureau.

16.     On appropriate TTB forms, Fairn filed an amended permit applications dated July 10, 2014 covering its export warehouse proprietor's permit as well as three other TTB permits  notifying TTB of Fairn's reissuance of the 615 shares of stock owned by Wolfgang Uhlig in the name of Elke Uhlig and notifying TTB of a change in the officers of Fairn.

17.     TTB investigators examined Fairn in late July and early August 2014.

18.     Following their investigation, TTB investigators asserted that Fairn's export warehouse proprietors permit "automatically terminated" nearly 16 years ago, thirty days after June 4, 1998, pursuant to 27 C.F.R. § 44.107 as a result of (a) the action of Fairn's sole owner,

Wolfgang Uhlig, placing his 615 shares, comprising 100 percent of Fairn stock issued, into a revocable trust with his wife, the "Wolfgang Uhlig and Elke Uhlig Revocable Living Trust," and as a result of (b) Fairn failure to notify TTB within 30 days of Wolfgang Uhlig's placement of his shares in the revocable trust.  *See* Notice of Violations (2WESD2014086:SLD) issued by TTB's Western II Field Office, dated September 3, 2014, at pp. 3-4.

19.     Due to the revocable nature of the 1998 trust, Wolfgang Uhlig retained control over Fairn's stock after creation of the trust.

20.     Wolfgang Uhlig was an owner and officer of Fairn before 1998 and until his death on December 24, 2012 exercising actual and legal control over the operations of the corporation.

21.     Elke Uhlig was an officer of Fairn before 1998 and continues to serve as an officer of Fairn exercising actual control over the operations of the corporation.

22.     In their September 3, 2014, Notice of Violations, TTB's investigators asserted that Fairn's terminated export warehouse proprietors permit automatically terminated a second time pursuant to 27 C.F.R. § 44.107, 30 days after January 1, 2014, when Elke Uhlig, as the surviving spouse of Wolfgang, placed the 615 shares of stock into four successor trusts controlled by the terms of the original trust.  *Id.*

23.     TTB Regulation 27 C.F.R. § 44.107, which is the best evidence of its contents,

provides:

> Where the issuance, sale, or transfer of the stock of a corporation, operating as an export warehouse proprietor, results in a change in the identity of the principal stockholders exercising actual or legal control of the operations of the corporation, the corporate proprietor shall, within 30 days after the change occurs, make application for a new permit; otherwise, the present permit shall be automatically terminated at the expiration of such 30-day period, and the proprietor shall dispose of all cigars, cigarettes, and cigarette papers and tubes on hand, in accordance with this part, make a closing inventory and closing report, in accordance with the provisions of §§ 44.146 and 44.151, respectively, and surrender his permit with such inventory and report.  If the application for a new permit is timely made, the present permit shall continue in effect pending final action with respect to such application.

24.     ATF Industry Circular 73-7, which is the best evidence of its contents, requires

reporting of "a change in the identity of the principal stockholders exercising actual or legal

control of the operations of the corporation."

25.     In 26 U.S.C. § 5713(b), Congress has prescribed that a permit holder receive an

Order from the Secretary of the Treasury or his delegate giving notice of facts charged and an

opportunity for a hearing before suspension or revocation of a permit.  *See* definition of

"Secretary" for purposes of Title 26 at 26 U.S.C. § 7701(a)(11)(B).

26.     On October 1, 2014 Fairn filed a submission with TTB's Western II Field Office contesting TTB's investigators' assertions that Fairn's export warehouse proprietor's permit automatically terminated and contesting other assertions.

27.     Fairn received from TTB's National Revenue Center ("NRC") an Inquiry Letter (502030400: RAG) dated requesting Fairn's submission of taxable removal reports from EW-WA-39 and tender of over $1.2 million in excise taxes for the period January 2012 through July 2014 based on an unspecified review.   TTB's NRC Specialist Rebecca Goforth subsequently advised counsel for Fairn by phone that the unspecified review was the report of TTB's investigation of Fairn.

28.     On October 30, 2014 Fairn filed a submission with the Director of TTB's National Revenue Center ("NRC") contesting TTB's investigators assertions that Fairn's export warehouse proprietor's permit automatically terminated and contesting other assertions.

29.     TTB granted an oral hearing to Fairn on December 11, 2014 by telephone conference concerning the January 2012-July 2014 excise tax claims in the Inquiry Letter during which TTB advised that Fairn would receive an e-mail message with a decision on Fairn's amended export warehouse application stating that Fairn was required to submit the documentation supporting a new application for an export warehouse proprietor's permit.

8

30.     TTB issued a final decision to Fairn communicated to Fairn's counsel in an e-mail dated December 12, 2014 that TTB was unable to process Fairn's amended export warehouse application "due to the unreported change in control" and, as a consequence, Fairn was required to submit a new application to TTB for an export warehouse proprietor's permit by January 10, 2015.

31.     Because the January 10, 2015 deadline to submit a new application falls on a Saturday when TTB is closed, the effective deadline is the next business day, Monday January 12, 2015.

32.     TTB's decision that Fairn is required to submit to TTB a new application for an export warehouse proprietor's permit, which requires a new export warehouse proprietor's bond, is a *de facto* and *de jure* decision that Fairn's current export warehouse proprietor's permit is invalid and is a *de facto* and *de jure* revocation of Fairn's current export warehouse proprietor's bond.

33.     Fairn has exhausted its administrative remedies.  On Friday January 9, 2015, TTB responded to Fairn's counsel's e-mail message of Wednesday January 7, 2015 to TTB's Deputy Director National Revenue Center, affirming TTB's December 12, 2014 e-mail decision

requiring the filing of a new export warehouse proprietor's permit application by January 10, 2015.

34.     Fairn is a Subchapter S corporation incorporated in California.

35.     Congress enacted 26 U.S.C. § 1361(c)(1), which is the best evidence of its contents, for purposes of Title 26, United States Code, provides that family members of the shareholder of a Subchapter S corporation and their estates shall be treated as one shareholder.

36.     Excise taxes on tobacco products are provided for in Chapter 52 of Title 26 of the United States Code.

37.     TTB is bound by the terms of 26 U.S.C. § 1361(c)(1) and lacks authority to nullify the terms of that provision.

38.     Elke Uhlig was married to Wolfgang Uhlig prior to 1998 and is the suriving spouse of Wolfgang Uhlig after his death on December 24, 2012.

39.     California community property law provides an ownership interest of Wolfgang Uhlig's spouse, Elke Uhlig, prior to Wolfgang Uhlig's creation of a revocable trust benefitting himself and Elke.   Pursuant to California law on the community property of a married couple, such community property, including a business, is jointly owned, managed and controlled by both spouses.  *See* California Family Code §§ 760-761, 1100.

40.     Neither the placement of Fairn stock in the Wolfgang Uhlig and Elke Uhlig Revocable Living Trust in 1998 nor the placement of Fairn stock in four successor trusts subject to the terms of the original trust, effective January 1, 2014, resulted in a change in the identity of the principal stockholders exercising actual or legal control over the operations of Fairn.

41.     As a family member of an S corporation shareholder, as a spouse and surviving spouse holding community property in California, and as an officer of Fairn prior to 1998 and to the present, Elke Uhlig has possessed and exercised and continues to possess and exercise actual and legal control over the operations of Fairn and its stock.

42.     This action seeks a determination by this Court that would facilitate the collection of tobacco excise taxes by TTB.

43.     A "transferee" TTB export warehouse proprietor becomes liable for excise taxes on untaxed domestic tobacco products that are transferred from a bonded manufacturer or another export warehouse.  *See* 26 U.S.C. § 5703(a)(2).

44.     Without a TTB export warehouse proprietor's permit, Fairn would not be a TTB export warehouse proprietor and could not be a proper transferee of untaxed domestic tobacco products to whom liability for excise taxes transfers.  *See* 26 U.S.C. § 5703(a)(2).

45.     A TTB permit is required to engage in the business of export warehouse

proprietor.  26 U.S.C. § 5713(a). The decision that Fairn's Export Warehouse proprietor's permit

is revoked will cause Fairn to suffer irreparable harm through loss of current sales, damage to its

reputation, and loss of future business.

46.     Fairn has current orders to purchase $62,740 in untaxpaid domestic tobacco

products that Fairn is only able to supply from EW-WA-39.

47.     Without a valid export warehouse proprietors permit, Fairn will be unable to

remove untaxpaid domestic tobacco products from export warehouse EW-WA-39 for delivery to

its current customers and will lose sales.

48.     Without a valid TTB export warehouse proprietor's permit, Fairn will be unable

to receive replenishment of its inventory of untaxpaid domestic tobacco products from its

suppliers to continue operating under its business model.

49.     Without a valid TTB export warehouse proprietor's permit, Fairn will be unable

to supply a full range of products desired by its customers and will lose their future business to

competitors who are able to supply such a full range of products.

**COUNT 1**

**Agency Action Contrary to Law and**

**Arbitrary and Capricious Agency Action Violates 5 U.S.C. § 706**

50.     Paragraphs 1 through 49 of the Complaint are incorporated by reference, and

alleged, as though fully restated herein.

51.     Fairn's export warehouse proprietor's permit became effective on June 2, 1992.

52.     For more than 20 years, Fairn has submitted and TTB has accepted Fairn's export

warehouse withdrawal reports on Taxable Articles Without Payment of Tax Form 5200.14.

53.     For more than the past 20 years, Fairn has submitted and TTB has accepted

Fairn's export warehouse proprietors bond.

54.     Notwithstanding the assertions of TTB's Investigators in the September 3, 2014

Notice of Violations, TTB's Inquiry Letter of September 16, 2014, TTB treated Fairn as an

export warehouse permit holder during the period January 2012 through July 2014 by requesting

Fairn's submission of Excise Tax Return Forms 5200.24 for the period January 2012 through

July 2014 and a tender of a total of over $1.2 million in excise taxes for transactions during that

period.

55.     After TTB NRC became aware of TTB's investigator's allegations of the

automatic termination of Fairn's export warehouse proprietor's permit in 1998, NRC continued

to accept Fairn's regular reports of removals of nontaxable untaxpaid domestic tobacco products from EW-WA-39.

56.     TTB's December 12, 2014 *de facto* and *de jure* e-mail decision that Fairn's export warehouse proprietors permit was revoked by operation of law in 1998 and in 2014 is without support and is arbitrary, capricious, an abuse of discretion, and contrary to law which the Court should set aside pursuant to 5 U.S.C. § 706.

57.     TTB's decision that the placement of stock of an S corporation in a revocable trust with a family member is a change in stock ownership of requiring notification to TTB without which a TTB permit automatically terminates is contrary to law, specifically 26 U.S.C. § 1361(c)(1).

58.     TTB's decision that the placement of stock of an S corporation in a revocable trust with a family member is a change in stock ownership of requiring notification to TTB without which a TTB permit automatically terminates is arbitrary and capricious in that it is inconsistent with TTB's continued treatment of Fairn as a valid export warehouse proprietor permit holder liable for additional excise taxes.

**COUNT II**

**Agency Action Taken Without Observance of Procedure**

**Required by Law – 26 U.S.C. § 5713(b), 5 U.S.C. § 558(c), 5 U.S.C. § 706(2)(D)**

59.     Paragraphs 1 through 58 of this Complaint are incorporated by reference, and

alleged, as though fully restated herein.

60.     At all times relevant to this action, plaintiff operated a TTB Export Warehouse,

under authority of a warehouse proprietor's permit issued by defendant.

61.     In connection with the operation of its TTB Export Warehouse, plaintiff received

transfers of tobacco products on which Federal Excise Taxes had not been assessed, made sales

and deliveries of such products to export customers in accordance with the procedures specified

in relevant statutes and regulations administered by TTB, maintained a warehouse bond as

required by TTB, created and maintained warehouse inventory records in a form required by

TTB regulations and filed all reports and other documents required by TTB.  During all relevant

periods, plaintiff made its TTB Export Warehouse available for inspection by TTB officials.

62.     TTB claims that plaintiff's TTB Export Warehouse proprietor's permit was

revoked by operation of law constitutes a *de facto* and *de jure* revocation of plaintiff's warehouse

proprietor's permit.

63.     TTB's demand that plaintiff make application for a TTB Export Warehouse proprietor's permit no later than January 10, 2015 constitutes a *de facto* and *de jure* revocation of plaintiff's warehouse proprietor's permit.

64.     Plaintiff's warehouse proprietor's permit is a "license" for purposes of the Administrative Procedure Act, and particularly 5 U.S.C. § 558.  5 U.S.C. § 551(8).

65.     The Administrative Procedure Act, 5 U.S.C. § 558(c), which is the best evidence of its contents, provides:

> (c). When application for a license is required by law, the agency, with due regard for the rights and privileges of the interested parties or adversely affected persons, and within a reasonable time, shall set and complete proceedings required to be conducted in accordance with sections 556 and 557 of this Act and shall make its decision. **Except in cases of willfulness or those in which the public health, interest or safety requires otherwise, the withdrawal, suspension, revocation or annulment of a license is lawful only if, before institution of agency proceedings therefor, the licensee has been given –**
>> **(1) Notice by the agency in writing of the facts or conduct which may warrant the action; and**
>> **(2) Opportunity to demonstrate or achieve compliance with all lawful requirements.**
>> Where the licensee has made timely and sufficient application for a renewal or a new license in accordance with agency rules, a license with reference to an activity of a continuing nature does not expire until the application has been finally determined by the agency.

Emphasis added.

66.     Defendant, prior to the commencement of proceedings to revoke, withdraw, suspend or annul plaintiff's TTB Export Warehouse proprietor's permit did not provide plaintiff with notice in writing of the facts which may warrant the action.

67.     Defendant, prior to the commencement of proceedings to revoke, withdraw, suspend or annul plaintiff's TTB Export Warehouse proprietor's permit, did not provide plaintiff with any opportunity to demonstrate or achieve compliance with all lawful requirements, including  requirements, if any,  in respect of which plaintiff may have been alleged to have been deficient.

68.     On information and belief, there are no circumstances relating to the public health, interest or safety which would relieve defendant of the obligation to provide plaintiff with the prior notice and opportunity to correct any defects pursuant to 5 U.S.C. § 558(c).

69.     The Administrative Procedure Act, 5 U.S.C. § 706(2)(D) requires a reviewing court to hold any lawful and set aside, agency action done "without observance of procedure required by law".

70.     To the extent defendant has revoked, suspended, withdrawn or annulled plaintiff's TTB Export Warehouse permit without observance of the procedures required by 5 U.S.C.

§ 558(c), this court must set aside such action as without observance of procedure required by

law, in accordance with 5 U.S.C. § 706(d)(2).

## COUNT III
### Agency Action Taken Without Observance of Procedure
### Required by Law –5 U.S.C. § 553, 5 U.S.C. § 706(2)(D)

71.    Paragraphs 1 through 70 of this Complaint are incorporated by reference, and

alleged, as though fully restated herein.

72.    TTB's determination in its Notice of Violations that the placement of stock of an

S corporation in a revocable trust with a family member is a change in stock ownership of

requiring notification to TTB without which a TTB permit automatically terminates is a rule of

general applicability promulgated without advance notice and opportunity to comment in

violation of 5 U.S.C. § 553.

73.    Section 4(a) of the Administrative Procedure Act, 5 U.S.C. § 553(b), requires that

all "legislative" agency rules be issued in accordance with notice and comment rulemaking

procedures. The statute, which is the best evidence of its contents, provides:

> General notice of proposed rule making shall be published in the Federal Register, unless persons subject thereto are named and either personally served or otherwise have actual notice thereof in accordance with law. The notice shall include—
>
> (1) a statement of the time, place, and nature of public rule making proceedings;
>
> (2) reference to the legal authority under which  the rule is proposed; and

(3) either the terms or substance of the proposed  rule or a description of the subjects and issues involved.

Except when notice or hearing is required by statute, this subsection does not apply—

(A) to interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice; or

(B) when the agency for good cause finds (and incorporates the finding and a brief statement of reasons therefor in the rules issued) that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest.

74.     The requirements of 5 U.S.C. § 553(b) apply to proceedings for the issuance of substantive rules with the force of law.  *Chrysler Corp. v. Brown*, 441 U.S. 281, 313 (1979); *Batterton v. Marshall*, 648 F.2d 694, 700–02 (D.C. Cir. 1980).  The term "rulemaking" embraces agency processes for formulating, amending or repealing such substantive rules.  5 U.S.C. § 551(5) (1988).  Any attempt by an agency to engage in rulemaking without opportunity for public comment is condemned.  *Nat'l Wildlife Fed'n v. Clark*, 577 F. Supp. 825, 828 (D.D.C. 1984).

75.     Substantive or legislative-type rules requiring notice-and-comment rulemaking as specified in 5 U.S.C. § 553(b) are those that relate to and change the standards of conduct, and have force of law.  *See, e.g.*, *Am. Hosp. Ass'n v. Bowen*, 834 F.2d 1037, 1045 (D.C. Cir. 1987).

76.     The requirements set forth in TTB's September 3, 2014 Notice of Violations pertaining to the reporting of a change in ownership or control of a Subchapter S corporation permit holder when placing S corporation stock in a revocable trust for the benefit of family members is a substantive requirement of general applicability which is legislative in nature and which changes standards of conduct.  Such requirements may only be imposed after TTB undertakes rulemaking as specified in 5 U.S.C. § 553(b).

77.     TTB at no time published advance notice of, or sought public comment concerning, the substantive requirements of general applicability for reporting a change in ownership or control as a result of placement of S corporation stock in a revocable trust for the benefit of a family member as outlined in TTB's Notice of Violations.

78.     The reporting requirements set forth in TTB's Notice of Violations do  not constitute "interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice," and are not exempt from the notice and comment rulemaking requirements set forth in 5 U.S.C. § 553(b).

79.     TTB has not made or published any determination relating to the change reporting requirement that, for "good cause," the "notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest," pursuant to 5 U.S.C. § 553(b)(3)(B).

80.     Section 10(e) of the Administrative Procedure Act, 5 U.S.C. § 706(2), which is

the best evidence of its content, requires any reviewing court to hold unlawful, and set aside, any

agency action which is "without observance of procedure required by law."

81.     To the extent that TTB Notice of Violations purports to establish substantive,

legislative rules applicable to the reporting obligations of permit holders, and to the extent said

document was promulgated without "observance of procedure required by law," this Court is

required to declare unlawful, and set aside, the requirements set forth in said document.

## PRAYER FOR RELIEF

**WHEREFORE,** Fairn respectfully requests that this Court enter Judgment in its favor, and that

this Court enter an Order as follows:

A.     Setting aside and declaring TTB's decision revoking Fairn's export warehouse

proprietor's permit for EW-WA-39 on the basis of a prior unreported change in ownership or

actual or legal control and automatically terminated in 1998 or 2014 to be arbitrary, capricious

and contrary to law;

B.     Enjoining TTB from seizure of Fairn's inventory in EW-WA-39;

C.     Enjoining TTB from taking any action inconsistent with Fairn holding a valid

export warehouse proprietor's permit.

D.      Holding the requirements of the TTB document styled as Notice of Violations to have been issued  "without observance of procedure required by law," and to set the same aside as violating the provisions of the Administrative Procedure Act, 5 U.S.C. § 553(b) and 5 U.S.C. § 706(2);

E.       Holding the requirements of TTB Notice of Violations to have been issued *ultra vires* by TTB, in violation of the requirements of 5 U.S.C. § 553(b) and 5 U.S.C. § 706(2);

F.      Enjoining Defendants from enforcing the requirements of Notice of Violations; and

G.      Providing Plaintiff with such other and further relief as this Court may deem just.

Respectfully submitted,


/s/  Michael K. Tomenga

Michael K. Tomenga, Esq. (D.C. Bar No. 257006)
Neville Peterson LLP
1400 16th Street, N.W., Suite 350
Washington, DC 20036-2227
(202) 776-1148
mtomenga@npwdc.com
Attorneys for Plaintiff


Dated:   January 13, 2015.